## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------------------X

PREFERRA INSURANCE COMPANY RISK
RETENTION GROUP,

        Plaintiff,

    vs.

NATIONAL ASSOCIATION OF SOCIAL
WORKERS, INC., NASW ASSURANCE
SERVICES, INC., and NASW INSURANCE
COMPANY, INC.,

        Defendants.

                      Case No.: 1:24-cv-02689
                      (ABJ)

-----------------------------------------------------------------------X

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NATIONAL
ASSOCIATION OF SOCIAL WORKERS, INC., NASW ASSURANCE SERVICES, INC.,
and NASW INSURANCE COMPANY, INC.'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO RULE 12(b)(6)</u>**

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
Richard W. Boone Jr., D.C. Bar No. 478545
Siobhán A. Mueller (*pro hac vice*)
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: siobhan.mueller@wilsonelser.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 6

    I.      The Insurance Program ......................................................................................... 7

    II.     Preferra's Allegations ......................................................................................... 10

         A.      Termination of the Program ..................................................................... 10

         B.      Alleged Post-Termination Conduct ......................................................... 12

ARGUMENT ........................................................................................................................ 15

    I.      Preferra's Unfair Competition/False Advertising Claim under the Lanham Act, 15 U.S.C. § 1125, against ASI (Count One) Fails .................................................. 16

    II.     Preferra's Breach of Contract Claims against ASI (Count Two) and NASWIC (Count Six) Fail ................................................................................................... 21

         A.      Allegations against ASI ........................................................................... 22

         B.      Allegations against NASWIC ................................................................. 24

    III.    Preferra Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing against ASI (Count Three) and NASWIC (Count Seven).................... 25

    IV.    Preferra's Claims for Tortious Interference with Business Relations against ASI (Count Four) and NASW (Count Eight) Fail ...................................................... 27

    V.     Preferra's Claim for Declaratory Judgment (Count Five) Fails.......................... 29

CONCLUSION ..................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allworth v. Howard Univ.*,
890 A.2d 194 (D.C. 2006) ...............................................................26, 27

*\*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)................................................15, 16, 18, 20

*\*Banneker Ventures, LLC v Graham*,
418 US App DC 398, 798 F.3d 1119 (2015) ..........................................27

*\*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 (2007)...................................................15, 18

*Bembery v. D.C.*,
758 A.2d 518 (D.C. 2000) ...............................................................21

*\*Bernhardt v. Islamic Republic of Iran*,
47 F.4th 856 (D.D.C. 2022)…………………………………………………...28, 29

*Bridges v. Blue Cross & Blue Shield Ass'n*,
935 F. Supp. 37, 45 (D.D.C. 1996)…………………………………………………30

*Brown v. Sessoms*,
774 F.3d 1016, 413 U.S. App. D.C. 328 (D.C. Cir. 2014) .....................26

*Brown v Twentieth Century Fox Film Corp.*,
799 F Supp 166 (1992) ...................................................................17

*Butler v. Enter. Integration Corp.*,
459 F. Supp. 3d 78 (D.D.C. 2020).....................................................30

*Caesar v. Westchester Corp.*,
280 A.3d 176 (D.C. 2022) ...............................................................21

*Cagle v. Southern Bell Tel. & Tel. Co.*,
143 Ga. App. 603, 239 S.E.2d 182 (Ga. Ct. App. 1977) .......................23

*Close It! Title Servs. v. Nadel*,
248 A.3d 132 (2021) ......................................................................28

*Dial A Car, Inc. v. Transp., Inc.*,
884 F. Supp. 584 (D.D.C. 1995).......................................................17, 21

*Farah v. Esquire Magazine,
   736 F.3d 528 (D.C. 2013) ...............................................................17, 19

Fed. Express Corp. v. Air Line Pilots Ass'n,
   67 F.3d 961, 314 U.S. App. D.C. 267 (D.C. Cir. 1995) ........................30

*Glenn v. Thomas Fortune Fay,
   222 F. Supp. 3d 31 (D.D.C. 2016) ........................................................29

*Globalaw Ltd. v. Carmon & Carmon Law Office,
   452 F. Supp. 2d 1 (D.D.C. 2006) ....................................................17, 21

Guantanamera Cigar Co. v. Corporacion Habanos,
   S.A., 672 F. Supp. 2d 106 (D.D.C. 2009) .............................................20

Gustave-Schmidt v. Chao,
   226 F. Supp. 196 (D.D.C. 2002) ..............................................................8

*Hais v. Smith,
   547 A.2d 986, 987 (D.C. 1988)...............................................................25

Hillbroom v. PricewaterhouseCoopers LLP,
   17 A.3d 566 (D.C. 2011) ........................................................................15

*Himmelstein v. Comcast of the Dist., L.L.C.,
   908 F. Supp. 2d 49 (D.D.C. 2012) .........................................................27

Keefe Co. v. Americable Intern, Inc.,
   755 A.2d 469 (D.C. 2000) ......................................................................22

Lannan Found. v. Gingold,
   300 F. Supp. 3d 1 (D.D.C. 2017) ...........................................................30

Lexmark Int'l v. Static Control,
   572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)................17, 18

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)................................................................................23

*Md. Cas. Co. v. Pac. Coal & Oil Co.,
   312 U.S. 270, 61 S. Ct. 510, 85 L. Ed. 826 (1941)................................30

Miniter v. Sun Myung Moon,
   736 F. Supp. 2d 41 (D.D.C. 2010) .........................................................20

Mira v. Nuclear Measurements Corp.,
   107 F.3d 466 (7th Cir. 1999) .................................................................23

*Nat'l Ass'n of Manufacturers v. S.E.C.*,
    800 F.3d 518 (D.C. Cir. 2015) ...................................................................................20

*\*Paleteria La Michoacana, Inc. v Productos Lacteos Tocumbo S.A. de C.V.*,
    743 F App'x 457 (D.C. Cir. 2018) .....................................................................17, 18

*Pirone v. Curtis Management Group, Inc.*,
    894 F.2d 579 (2d Cir. 1990)........................................................................................18

*Powder River Basin Res. Council v. United States DOI*,
    2024 U.S. Dist. LEXIS 8980 (D.D.C. 2024) ...........................................................30

*\*Sharp v. Capitol City Brewing Co., LLC*,
    680 F. Supp. 2d 51 (D.D.C. 2010) ......................................................................23, 25

*Tingling-Clemmons v. District of Columbia*,
    133 A.3d 241 (D.C. 2016) ..........................................................................................15

*Tooley v. Napolitano*,
    586 F.3d 1006, 388 U.S. App. D.C. 327, 2009 U.S. App. LEXIS 25175 (D.C.
    Cir. 2009) ....................................................................................................................20

*\*Tsintolas Realty Co. v. Mendez*,
    984 A.2d 181 (D.C. 2009) ...........................................................21, 23, 24, 25

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
    768 F. Supp. 2d 117 (D.D.C. 2011) .............................................................................8

*\*Wright v. Howard Univ.*,
    60 A.3d 749 (D.C. 2013) ............................................................................................26

**Statutes**

15 U.S.C. § 43(a) .............................................................................................................17

15 U.S.C. § 1125(a)(1).....................................................................................................17

15 U.S.C. § 1125(a)(1)(A).........................................................................................17, 19

15 U.S.C. § 1125(a)(1)(B)................................................................................................17

28 U.S.C. § 2201(a) ..........................................................................................................29

Lanham Act, 11 U.S.C. § 1125.........................................................6, 14, 16, 17

Lanham Act, 15 U.S.C. § 1051, *et seq.*...........................................................................16

**Rules**

Fed. R. Civ. P. § 12(b)(6)..............................................................................................1, 15, 31

**Other Authorities**

Black's Law Dictionary 785 (6th ed. 1990)..............................................................................23

*Restatement (Second) of Contracts* § 205, Comment a (1981).............................................25, 26

*Restatement (Second) of Contracts* § 205, Comment d (1981) ...................................................26

Defendants National Association of Social Workers, Inc. ("NASW"), NASW Assurance Services, Inc. ("ASI"), and NASW Insurance Company, Inc. ("NASWIC") (collectively, the "Defendants"), by and through their attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint (the "Complaint") (Doc. No. 1), in its entirety and with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Complaint filed by Plaintiff Preferra Insurance Company Risk Retention Group ("Preferra" or "Plaintiff") is a work of fiction, intended solely to obscure the misdeeds of Anthony Benedetto ("Benedetto"), Preferra's Chief Executive Officer, and his subordinates, Len Clapp ("Clapp") and Helen Maleady ("Maleady"). Until early this year, Benedetto also served as Chief Executive Officer of Defendants ASI and NASWIC, where he abused his position and was ultimately dismissed. Benedetto and his subordinates then forced Preferra to sever all ties with NASW, ASI, and NASWIC while still attempting to trade on their goodwill. This action (the "Preferra Action"), which essentially seeks to preclude NASW from contacting its own members, is the lynchpin of that attempt. The Court should reject those efforts, which are tortious and unlawful, and dismiss all claims against the Defendants as a matter of law.

The Preferra Action concerns a program of insurance previously offered by NASW to its members (the "Insurance Program"). Until May 2024, Preferra, ASI, and NASWIC had been the entities employed by NASW to further the interests of its members, who are professional social workers, by offering a combination of insurance, professional development, ethics training and risk management, conferences, publications, advocacy related programs, and other services. The Insurance Program had three key pieces: (1) Preferra, (which was formerly known as NASW

Risk Retention Group Inc. or "NASWRRG"), is a risk retention group that provides insurance coverage to policyholders (most of whom are NASW members), including both the underwriting and claim functions; (2) ASI, which provided marketing and other services, including office and administration support to Preferra, pursuant to a Management and Administrative Services Agreement entered into in 2018 (the "2018 ASI Agreement") and a subsequent Administrative Services Agreement entered into in 2022 (the "2022 ASI Agreement"), with later purported amendments; and (3) NASWIC, which is a captive reinsurer to whom a substantial portion of Preferra's risk was ceded, first under a Quota Share Agreement and later purportedly under an Excess of Loss Policy ("XOL Policy").

NASW is the sole shareholder of ASI, which is the sole shareholder of NASWIC. Since Preferra is an insurance mutual company, its policyholders are its shareholders. However, to ensure that the interest of NASW's members remained paramount, it was always intended that Preferra would work closely with ASI and NASWIC, which provided critical funding and services to Preferra through various contractual arrangements. In particular, there were three separate Surplus Funding Notes totaling approximately $11 million dollars. The first note, dated August 16, 2012, initially permitted ASI and NASWIC to appoint two members to Preferra's Board of Directors. That note was later purportedly amended by Benedetto and his subordinates (who had no authority to do so) so that the note now provides a right to "nominate" 33⅓ percent of the board's voting directors.[1] The subsequent two notes, dated October 1, 2015 and April 1, 2020, each contained similar nominating rights, thereby providing ASI and NASWIC the ability

---

[1] Preferra's Articles of Incorporation and Bylaws require the board to have between five and nine voting directors.

to nominate up to a maximum of three directors under each Note.[2]  There were also other contracts between ASI, NASWIC, and Preferra, including Administrative Support and Insurance Services Agreements, which are directly at issue in this litigation.

As noted, in addition to their contractual relationship, Benedetto served concurrently as the Chief Executive Officer of ASI, NASWIC, and Preferra.  The three companies also had overlapping management teams, many of whom, it now seems, were loyal to Benedetto.  In fact, all of the unlawful amendments to the agreements between Preferra and ASI or NASWIC were executed by the same overlapping officers – Benedetto, Clapp, and Maleady.  Accordingly, matters escalated quickly when NASW discovered financial issues concerning amounts due from Preferra to ASI and NASWIC under the relevant contracts.

Prior to 2024, ASI, NASWIC, and Preferra filed joint consolidated audited financial reports with NASW.  The financial issues were first discovered when NASW's management team, including the CEO and CFO, started asking questions and requesting records for payments made and due between the subsidiary entities (in particular, unpaid fees to ASI).  Although such questions were part of the routine duties of NASW's management to verify whether the financial statements of its subsidiaries were accurate, Benedetto and his team refused to cooperate. Instead, they laid the groundwork for a disassociation of the entities, with the apparent goal of retaining control of Preferra without any oversight by NASW, ASI, or NASWIC.  Initially, this was accomplished by implementing a series of unilateral and unlawful changes to the parties' contractual relationships.

---

[2] Because each note grants a right to nominate 33⅓ percent of the board's voting directors, ASI and NASWIC collectively have the right to select the entire Preferra board until the notes are paid, subject to approval by the policyholders.

Benedetto first sought to consolidate his control over the management team by entering into unauthorized employment agreements with numerous key employees of ASI. When the instant dispute came to a head on January 5, 2024 (the date Benedetto purportedly terminated his employment agreement with ASI and NASWIC and his subordinate Clapp terminated the 2022 ASI Agreement) most of those employees resigned from ASI and, along with Benedetto, promptly joined Preferra in an apparent effort to consolidate control of the Insurance Program within that entity. ASI and NASWIC responded on February 2, 2024, rejecting both Preferra's attempt to withdraw from the Insurance Program and Benedetto's resignation, instead terminating him "for cause." Employment-related claims are now pending in Maryland state court on behalf of Benedetto and Maleady. Defendant ASI has also asserted counterclaims.

Benedetto and his subordinates also unilaterally modified the terms of the 2018 ASI Agreement between ASI and Preferra. The 2018 ASI Agreement initially provided that ASI owned the professional liability insurance "book of business," with NASWRRG responsible for reimbursing ASI for contracted services and paying 13.5% of Gross Premiums for shared expenses. NASWRRG was also barred from offering professional liability insurance upon the agreement's termination.

Although the arrangement in the original 2018 ASI Agreement complied with ASI's bylaws and had regulatory approval, subsequent changes to the 2018 ASI Agreement, unlawfully made by Benedetto without board approval, fundamentally altered the relationship between ASI and NASWRRG. These included the following purported amendments:

(1)    in June of 2022, ownership of the insurance "book of business" was supposedly transferred to NASWRRG by the 2022 ASI Agreement, which also reduced NASWRRG's financial obligations and altered the non-compete clause to allow shared rights to policy data upon termination;

(2)    in January of 2023, the 2022 ASI Agreement was amended to effect the rebranding of NASWRRG as Preferra;

4

(3)     in October of 2023, the 2022 ASI Agreement was purportedly amended to grant Preferra marketing rights, cease premium payments by Preferra unless ASI sublicensed marks and data, and to specify ownership of policies based on who issued them (ASI vs. Preferra); and

(4)     in January of 2024, Preferra unilaterally assigned the 2022 ASI Agreement to Preferra Services Corp., purportedly shifting the administrative role and attempting to impose a $200,000 annual fee on ASI for services.

These amendments reversed ASI's original ownership and payment structure in the 2018 ASI Agreement, purportedly granting Preferra control of the insurance book of business and administrative services, all without board oversight. Additionally, NASW's ongoing accounting of the books and records has revealed that Preferra owes multiple millions of dollars to ASI under the 2018 ASI Agreement.

Benedetto and his subordinates took further actions to reduce the amount of commissions Preferra would have to pay to NASWIC under its reinsurance agreement by initially replacing the Quota Share Agreement with the XOL Policy. Despite notifying the required regulatory body of this change, Benedetto and his subordinates misled the District of Columbia Department of Insurance, Securities and Banking ("DISB") and the NASWIC Board of Directors about their true intention, which was to terminate all agreements between the entities by replacing the Quota Share Agreement with the XOL Policy, and then to terminate the XOL Policy just three days after it went into effect. At the same time, Benedetto and his subordinates ostensibly terminated the 2022 ASI Agreement, thereby effectively terminating all contractual relationships between ASI, NASWIC, and Preferra. Yet, Preferra apparently still felt that it was entitled to trade on NASW's goodwill and to have unfettered access to NASW's members.

In an attempt to have this Court sanction Benedetto's efforts, Preferra filed its Complaint in this Court on September 20, 2024. That Complaint falsely alleges that, in 2023, NASW came under new leadership and, as a result of the decisions of that new leadership and changes to the

various boards, the relationship between Preferra and NASW, through ASI and NASWIC, became strained. In truth, NASW's concern about accounting issues related to royalty payments and the subsidiaries' lack of transparency with respect to books and records predated any change in NASW leadership. Regardless, by 2024, Benedetto apparently realized that he was about to be ousted from control of the Insurance Program. In response, he orchestrated the unlawful scheme described herein to consolidate his control within Preferra, which included his resignation from the other entities, his termination of Preferra's relationship with ASI and NASWIC, and the filing of several lawsuits, including the instant Preferra Action.

The Complaint filed in the Preferra Action purports to assert causes of action: (1) against NASW for tortious interference with business relations; (2) against ASI for unfair competition/false advertising under the Lanham Act, 11 U.S.C. § 1125, breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with business relations, and declaratory judgment; and (3) against NASWIC for breach of contract and breach of the covenant of good faith and fair dealing. On these counts, Preferra seeks injunctive relief, monetary damages, punitive damages, and attorney's fees and costs of litigation.

Despite the breadth of Plaintiff's allegations, the Complaint offers nothing more than conclusory assertions regarding alleged wrongdoing by NASW, ASI, or NASWIC. Accordingly, Plaintiff has failed to state a viable claim under any of the theories advanced and, therefore, Plaintiff's Complaint must be dismissed in its entirety with prejudice.

## BACKGROUND

As discussed, the Preferra Action concerns the Insurance Program previously offered by NASW to its members. Until May 2024, Preferra, ASI, and NASWIC had been the entities employed by NASW to implement the Insurance Program and thereby further the interests of

6

NASW's members, who are professional social workers. (Doc No. 1, ¶ 7). The Insurance Program had three elements: (1) Preferra, a risk retention group that provides insurance coverage to policyholders, including both the underwriting and claim functions; (2) ASI, which provided marketing and other services, including office and administration support, to Preferra under the aforementioned 2018 ASI Agreement and 2022 ASI Agreement; and (3) NASWIC, which is a captive reinsurer to whom a substantial portion of Preferra's risk was ceded, first under a Quota Share Agreement and later purportedly under the short-lived XOL Policy. (*Id.*, ¶ 11).

## I.    **The Insurance Program**

Plaintiff Preferra, which was formerly known as NASWRRG, is a risk retention group ("RRG") originally formed by ASI and NASWIC for the purposes of providing insurance coverage to NASW members across the United States.[3] (*Id.*, ¶ 8). Preferra writes professional, general, and cyber liability coverage and oversees underwriting, collects premiums, and adjusts claims made by the insured. (*Id.*). As an RRG, Preferra is owned and controlled by its policyholders. (*Id.*).

Defendant ASI was formed by NASW to manage certain aspects of the Insurance Program. (*Id.*, ¶ 9). Specifically, ASI provided marketing and other services to Preferra, such as office and administration support, in exchange for reimbursement of expenses and a fee. (*Id.*, ¶ 11). ASI is a for-profit subsidiary of NASW, which is the sole shareholder. (*Id.*, ¶ 9). Defendant NASWIC is a captive reinsurance company, created to assume a substantial portion of Preferra's risk through reinsurance contracts. (*Id.*, ¶ 10). NASWIC is a for-profit subsidiary of ASI, which is the sole shareholder. (*Id.*, ¶ 10).

---

[3] Unlike a conventional insurance company, an RRG is an entity created pursuant to a federal statute that can provide insurance nationwide without needing to specifically be admitted in each state.

The relationship between Preferra and ASI was governed by a Management and Administrative Services Agreement, originally effective July 1, 2018 (the aforementioned "2018 ASI Agreement"). (Ex. 1).[4] A new Administrative Services Agreement, the 2022 ASI Agreement, which is at issue in this lawsuit, was entered into years later, effective June 1, 2022, and amended on January 1, 2023 and October 1, 2023 (the aforementioned "2022 ASI Agreement"). (*Id.*, ¶ 16). (Ex. 2). Under both agreements, ASI provided Preferra with administrative staff and support, including marketing and other administrative services. (*Id.*, ¶ 17). In exchange, Preferra paid a fee to ASI and reimbursed it for certain expenses. (*Id.*).

The 2022 ASI Agreement also allegedly governed the ownership of the Insurance Program's so-called "book of business," which was limited to contracts entered into during the pendency of the ASI Agreement. (*Id.*, ¶ 18). Specifically, the 2022 ASI Agreement, by its October 1, 2023 amendment, provided the following:

> The parties agree that ASI shall have exclusive ownership of the book of business comprised of policies of insurance bound by ASI during the term of this Agreement ("ASI Policies"). For the avoidance of doubt, the parties understand and agree that nothing in this section 14 shall limit or restrict [Preferra's] exclusive ownership, as provided by Section 3 of this Agreement, of the book of business and related expirations and data for policies of insurance bound on behalf of [Preferra] by producers other than ASI.

(Ex. 2, p. 9). Section 3 of the 2022 ASI Agreement further provided:

> All information and records relating to the professional liability insurance program, whether created by [Preferra] or ASI or other parties, including member information and data, policy data, renewals, expirations, and all other data pertinent to the professional liability insurance book of business belongs to [Preferra], which shall have exclusive ownership of the book of business."

(Ex. 2, p. 2).

---

[4] Defendants' Exhibits 1-4 are incorporated by reference in the Complaint. *See, e.g., Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (A court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint." (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002))).

According to the Complaint, ASI did not bind any insurance policies during the term of the ASI Agreement and, therefore, there are no ASI Policies.  (*Id.*, ¶ 19).  As a result, based on the current terms of the ASI Agreement, Preferra purports to be the exclusive owner of the "book of business," claiming that ASI does not have any relationship whatsoever with the Preferra policyholders.  (*Id.*).  Of course, under the plain terms of the 2022 ASI Agreement, the "book of business" is limited to insurance contracts (which expire yearly), entered into during the pendency of the 2022 ASI Agreement (which has purportedly been terminated by Preferra).  Accordingly, Preferra now seeks to have this Court expand how "book of business" is defined so as to preclude Defendants from ever again contacting NASW's members regarding any insurance matter.  However, even under the unauthorized amendments to the 2022 ASI Agreement, NASW remained free to communicate with its members however it wished, including through ASI.[5]  Ownership of the "book of business" confers no rights beyond the expired or soon expiring insurance contracts.

Additionally, prior to January 1, 2024, Preferra had a quota share reinsurance agreement with NASWIC (the aforementioned "Quota Share Agreement"), whereby a substantial percentage of Preferra's risk was ceded to NASWIC.  (*Id.*, ¶ 23).  (Ex. 3).  In exchange, NASWIC received a percentage of the premiums paid by the policyholders and was obligated to pay a percentage of the claims incurred.  (*Id.*).  However, effective January 1, 2024, the Quota Share Agreement was purportedly replaced with an excess of loss policy (the aforementioned "XOL Policy"), which allowed for NASWIC to assume less risk, because NASWIC's coverage was triggered only if the loss exceeded a certain threshold amount.  (*Id.*, ¶ 24).  (Ex. 4).

---

[5] Regardless, the new 2022 ASI Agreement, which purportedly gave Preferra control of the "book of business," was made by Benedetto unilaterally, without authorization.

According to the Complaint, the transition from the Quota Share Agreement to the XOL Policy was appropriate because Preferra had matured and developed an increased capacity for risk. The corresponding savings in reinsurance premiums was purportedly to be passed to Preferra's policyholders, the owners of the RRG. (*Id.*, ¶ 25). Of course, the risk associated with the reduction of available reinsurance was also passed on to those policyholders – including the real possibility that Preferra could become insolvent, leaving those policyholders (NASW's members) without any insurance. Regardless, Benedetto lacked the power to terminate and unilaterally replace the Quota Share Agreement with the XOL Policy. Given that this change afforded no benefit to NASWIC, he also clearly breached his fiduciary duties in doing so.

## II.    Preferra's Allegations[6]

According to the Complaint, the seeds of the dispute between Benedetto and the Defendants arose in January 2023, when NASW transitioned to new leadership.[7] (*Id.*, ¶ 32). Dr. Anthony Estreet ("Estreet") was hired as CEO and Sekou Murphy ("Murphy") was hired as CFO. (*Id.*). At that time, it purportedly became clear to Preferra that Estreet and Murphy were dissatisfied with the financial benefit flowing to NASW though the Insurance Program and, accordingly, made efforts to shift more profit to ASI from the premiums paid by policyholders to Preferra. (*Id.*, ¶ 33).

### A.    Termination of the Program

The Complaint asserts that Estreet and Murphy did not appreciate or understand that fact that, as an RRG, Preferra is owned by its policyholders and that Preferra's Board of Directors

---

[6] Defendants substantially deny Preferra's allegations, which are repeated herein solely for the purpose of this motion.

[7] In truth, these tensions existed well before January 2023, and the parties had been disputing the royalty calculations and other aspects of their agreements.

have a fiduciary obligation to provide its owners with quality insurance programs in the most cost efficient manner, and to utilize Preferra's surplus assets in a manner that benefits its owners, including the issuance of policyholder dividends or premium refunds.  (*Id.*).

In early 2023, Murphy allegedly attempted to pressure Preferra and ASI to accept a "retroactive calculation of the fees paid to ASI" using a calculation that "had never been used or agreed to, and to restate the financial records for Preferra and ASI for the prior five years in order to artificially inflate the profits of ASI by retroactively shifting more of Preferra's surplus profit to ASI."  (*Id.*, ¶ 34).  Those attempted actions were allegedly rejected for numerous reasons, including the fact that they would create significant audit and regulatory risks for all entities, including NASW, which is a non-profit entity.  (*Id.*, ¶ 35).

The Complaint asserts that, in July 2023, the Preferra and NASWIC Boards voted to replace the Quota Share Agreement with the XOL Policy, which required the approval of DISB.  (*Id.*, ¶ 36).  The transition from the Quota Share Agreement to XOL Policy allegedly shifted more of the risk to Preferra, because as an RRG, Preferra was matured at that time to the point that it was able to take on more risk.  (*Id.*, ¶ 37).  The Complaint alleges that this was a benefit to the policyholders because Preferra would pay less in reinsurance premiums and thus have more money to return to policyholders.  (*Id.*).

After Estreet was hired as the CEO of NASW, he was allegedly named to the Preferra Board of Directors, pending approval by DISB.  (*Id.*, ¶ 38).  However, in August 2023, DISB notified Preferra that Estreet was not approved, and he was removed from the Preferra Board.  (*Id.*).  Thereafter, the relationship between Preferra and NASW (through ASI and NASWIC) purportedly became "further strained and adversarial."  (*Id.*, ¶ 40).

In October 2023, Murphy allegedly attempted unsuccessfully to convince DISB to block approval of the change from the Quota Share Agreement to the XOL Policy, to supposedly prevent NASWIC from performing the contract because it would ultimately result in less money going to NASW. (*Id.*, ¶ 41). Murphy purportedly made this attempt as an officer of NASW, a non-party to the contract, and without any authority to speak on behalf of Preferra or NASWIC. Notwithstanding, on December 6, 2023, DISB approved the XOL Policy. (*Id.*, ¶ 42). Within a week, NASW management allegedly terminated and replaced various ASI Board members, including Benedetto. (*Id.*, ¶ 43). The remaining ASI Board members purportedly then resigned in protest. (*Id.*, ¶ 44). Thereafter, the newly appointed ASI Board allegedly terminated most of the NASWIC Board, including Benedetto, and the remaining Board members again resigned in protest. (*Id.*, ¶ 45).

On January 5, 2024, Preferra purportedly terminated its agreements with ASI and NASWIC, effective May 4, 2024 and May 6, 2024, respectively. (*Id.*, ¶ 47). Benedetto also purportedly resigned from ASI and NASWIC for "good cause" pursuant to Section 7.5(b)(iii) of his employment agreements. (*Id.*, ¶ 48). On February 2, 2024, ASI and NASWIC responded to Benedetto's resignation, purporting to terminate his employment agreement "for cause." Benedetto is currently employed by Preferra only. (*Id.*, ¶ 50). The Complaint alleges that ASI and NASWIC have refused to honor their respective obligations to pay severance in the form of reimbursement to Preferra for their respective share of Mr. Benedetto's base salary. (*Id.*, ¶ 51).

### B.    Alleged Post-Termination Conduct

The Complaint alleges that, following Preferra's January 5, 2024 termination of the ASI Agreement and the XOL Policy, both ASI and NASWIC began engaging in tortious conduct and breached numerous contractual obligations. (*Id.*, ¶ 52).

Preferra asserts that ASI breached its contractual obligations by, among other things, "failing to provide services that were paid for by Preferra," "failing to pay severance for Mr. Benedetto as required by his employment agreement," "locking Preferra employees out of physical space that ASI was obligated to provide," "refusing access to electronic data and systems, files and documents, including historical claim files and other confidential information, which is necessary for Preferra to perform its functions," and "interfering with employee benefits for employees who were dually employed by ASI and Preferra." (*Id.*, ¶ 53). The Complaint also alleges that ASI violated the Lanham Act and tortiously interfered with Preferra's business relationships when it engaged in a "campaign of providing false and misleading communications" to interfere with Preferra's policyholders and to mislead them into wrongly believing that ASI, rather than to Preferra, provides their insurance coverage. (*Id.*, ¶ 54).

Specifically, the Complaint asserts that ASI improperly used Preferra's "proprietary list of policyholder contact information":

> (1)    on April 25, 2024, when ASI sent an email to all of Preferra's policyholders: (a) urging them not to give their standing proxy to vote on various matters to Dr. Richard Jones, Chairman of Preferra's Board of Directors, suggesting that Dr. Jones and Preferra were not acting in their best interest; and (b) asserting that Preferra "has no connection to the social work field" while claiming that "ASI's dedication to serving you remains unwavering," despite ASI having no relationship with the policyholders; and

> (2)    on July 3, 2024, when Stacy Hammond, Interim CEO of ASI, sent another letter to Preferra's policyholders, addressing the letter "[t]o our loyal customers," discussing the dispute between Preferra and ASI, and advising policyholders that "if you have any questions about your existing professional liability insurance policy, please contact us," which Preferra contends was "ASI is telling policyholders that it is the provider of their policy and that ASI and not Preferra is the entity to contact with questions regarding their policy."

(*Id.*, ¶ 55).

The Complaint further alleges that the ASI website currently has an "FAQ" section related to ASI and Preferra, which includes the following questions and answers:

Question: "Is my PLI coverage still in effect?"

Answer: "Yes. If you have a current policy with Preferra, your coverage is intact."

Question: "if I am ready to renew my [Preferra] policy, what should I do?"

Answer: "Call us at 855-385-2160 or asi@naswasi.org. You may also contact us on our chat form at www.naswassurance.org."

Question: "Who do I contact if I have specific [Preferra] policy Questions?"

Answer: "Contact our Customer Care Unit at 855-385-2160 or asi@naswasi.org. You may also contact us on our chat form at www.naswassurance.org."

Question: "Should I delegate my standing proxy vote?"

Answer: "If you provide your standing proxy, you will be agreeing to have Preferra's President, Richard Jones, vote on your behalf. As a policyholder, this is your choice to make, but in an election year like this one, we are reminded how important voting is. We encourage you to give this decision thoughtful consideration. Entrusting your vote to another person means relinquishing control over your own vote. We urge you to think carefully before giving anyone your proxy."

(*Id.*, ¶ 58).

As for NASWIC, the Complaint alleges that, under the direction of NASW, it breached its contractual obligations to Preferra because it: (1) failed to pay severance due to Mr. Benedetto; (2) impaired Preferra's ability to comply with its regulatory obligations by refusing to communicate with Preferra and blocking access to data, emails and other information; (3) failed to meet its financial obligations under the Quota Share Policy by filing to provide $3,100,000 in security for potential losses through December 31, 2023; (4) failed to pay reinsurance amounts due and owing to Preferra under the Quota Share Policy in connection with losses that NASWIC was obligated to cover; and (5) failed to pay over $180,000 in claims. (*Id.*, ¶¶ 62-65). Preferra also claims that NASW tortiously interfered with its business relations by intentionally interfering with Preferra's relationship with ASI and NASWIC "by, among other things, causing ASI and NASWIC not to perform their contractual obligations." (*Id.*, ¶ 100).

The Complaint purports to assert causes of action against ASI for: (1) unfair competition/false advertising under the Lanham Act, 11 U.S.C. § 1125; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) tortious interference with business relations; and (5) declaratory judgment; against NASWIC for: (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing; and against NASW for tortious interference with business relations. (*Id.*, ¶¶ 66-101). Preferra seeks declaratory and injunctive relief, monetary damages, punitive damages, and attorney's fees and costs of litigation.

## ARGUMENT

In determining a Rule 12(b)(6) motion to dismiss, the Court must "accept[] the [factual] allegations in the complaint as true and view[] all facts and draw[] all reasonable inferences in favor of the plaintiff." *Tingling-Clemmons v. District of Columbia*, 133 A.3d 241, 245 (D.C. 2016) (citing *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966) (internal quotation marks omitted).

Courts are to utilize a two-step approach when ruling on whether a complaint adequately states a claim to relief. *Iqbal*, 556 U.S. at 679-80, 129 S.Ct. at 1950. First, a court should "begin by identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of the truth." *Id.* Conclusory statements and recitals of the elements of a cause of action, thus, are insufficient to sustain a complaint. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Second, after stripping these legal conclusions from the complaint, a court should look at any remaining "well-pleaded factual allegations," assume them to be true and "determine whether … they plausibly give rise to an entitlement to relief." *Id.* Furthermore, where the remaining facts are merely consistent with a claim, but do not permit the reasonable inference that the defendant is liable, the complaint should be dismissed. *Id.*

Here, Plaintiff's Complaint purports to assert causes of action: (1) against ASI for unfair competition/false advertising under the Lanham Act, 11 U.S.C. § 1125, breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with business relations; (2) against NASWIC for breach of contract and breach of the covenant of good faith and fair dealing; and (3) against NASW for tortious interference with business relations. Preferra also alleges a cause of action for declaratory judgment requesting that the "Court should declare that ASI has no relationship and no rights to communicate with Preferra policyholders regarding their policies of insurance." However, for each purported claim, Preferra's vague and conclusory allegations fail to allege a sustainable cause of action. Accordingly, Plaintiff's Complaint should be dismissed, in its entirety, with prejudice.

**I.    Preferra's Unfair Competition/False Advertising Claim under the Lanham Act, 15 U.S.C. § 1125, against ASI (Count One) Fails**

The Lanham Act, 15 U.S.C. § 1051, *et seq*., prohibits deceptive trade practices such as false advertising and trademark infringement. Section 1125 of the Lanham Act provides for civil

liability in the case of "[a]ny person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any … false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the . . . sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities[.]"

15 U.S.C. § 1125(a)(1)(A) and (B)[8]; *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. 2013).

Section 43(a) of 15 U.S.C. § 1125(a)(1) "thereby provides for 'two distinct bases of liability'—first, in subsection (A), false association, also known as unfair competition or trademark infringement and, second, in subsection (B), false advertising." *See Lexmark Int'l v. Static Control*, 572 U.S. 118, 134 S. Ct. 1377, 1384, 188 L. Ed. 2d 392 (2014). To assert a false association (unfair competition) claim, plaintiff "must establish a few key elements: (1) [defendant] uses the mark in U.S. commerce in connection with the sale of goods or services; (2) [defendant]'s use of its mark is likely to cause consumer confusion; and (3) [defendant]'s use will likely damage [Plaintiff]. *Paleteria La Michoacana, Inc. v Productos Lacteos Tocumbo S.A. de C.V.*, 743 F App'x 457, 463 (D.C. Cir. 2018) (citing 15 U.S.C. § 1125(a)(1)(A)).

To recover under the Lanham Act for false advertising, a plaintiff must show that defendants "made statements of fact in [their] commercial advertising promotion that were (1) false or misleading, (2) actually or likely deceptive, (3) material in their effects on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to the plaintiff[s]." *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 58 (D.D.C.

---

[8] Preferra incorrectly references "11 U.S.C. § 1125" in Count One.

2006) (quoting *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 592 (D.D.C. 1995)). Under both Section 43(a) of the Lanham Act and the common law of unfair competition, the "ultimate test" is whether consumers are likely to be confused as to origin or endorsement." *Brown v Twentieth Century Fox Film Corp.*, 799 F Supp 166, 173 (1992) (quoting *Pirone v. Curtis Management Group, Inc.*, 894 F.2d 579, 585 (2d Cir. 1990)).

As an initial matter, Preferra has failed to plead statutory standing because it failed to plausibly allege that its commercial interests have been or are likely to be harmed. A plaintiff claiming unfair competition "can only establish the third element, damage, upon making a prerequisite showing that it has a legally cognizable commercial interest that would be harmed by infringement." *Paleteria*, 743 F. App'x at 463 (quoting *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 128-132 (2014)). To make that showing, in turn, a plaintiff must demonstrate "an injury to its commercial sales or prospects," such as "loss of sales from customers" or "evidence of consumer confusion." *Id.* at 468.

Preferra has clearly not met this standard. The Complaint offers no factual allegations that Preferra is suffering or will be likely to suffer the type of commercial harm that the Lanham Act seeks to prevent, relying instead on "mere conclusory statements," or "[t]hreadbare recitals of the elements" of injury, which the Supreme Court has instructed are categorically insufficient "to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In that regard, Preferra alleges only that "[a]s a direct result of ASI's actions, Preferra has and is likely to lose more policyholders due to ASI's false and misleading statements and thus will suffer harm." Such conclusory allegations are insufficient to establish standing.

Further, even if it had standing, Preferra fails to allege a viable cause of action against ASI for unfair competition or false advertising under the Lanham Act. The Complaint alleges that ASI violated the Lanham Act by making "false and misleading statements to Preferra policyholders." (Doc No. 1, ¶ 69). Preferra asserts that those "material falsehoods and misrepresentations" are designed to, and likely to, mislead the Preferra policyholders to wrongly believe that their Preferra policies are provided by ASI to induce policyholders to contact ASI in an attempt to convert the policyholders to other carriers with whom ASI presumably has a relationship. (*Id.*). The Complaint does not even attempt to explain those allegations, including how any statement by ASI could have mislead anyone. Accordingly, we are left with only Preferra's conclusory allegations, which are insufficient as a matter of law to state a viable claim of unfair competition under the Lanham Act.

Preferra also does not allege that ASI made any statements which are false and misleading because everything ASI is alleged to have said is true. No contract precludes ASI from communicating with Preferra's policyholders, nearly all of whom also happen to be NASW's members. The allegations that ASI made statements to induce Preferra's policyholders to contact ASI so that it could refer them to other carriers is also pure speculation. (*Id.*, ¶¶ 68, 69). The Complaint also does not allege that those policyholders' purchasing decisions were impacted by any statement. Rather, all that is really alleged is that, after Preferra unilaterally cut all ties with Defendants, they became Preferra's competitors. However, the Lanham Act was not meant to stifle competition. *See Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. 2013) ("The mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act." (emphasis in original)).

Additionally, Preferra has failed to adequately allege commercial speech that proposes a commercial transaction. The statements posted on the ASI website cannot plausibly be viewed as commercial speech under § 1125(a)(1)(A) or (B) of the Lanham Act because Preferra does not adequately allege that ASI is selling or promoting a competing product. *See, e.g., Farah*, 736 F.3d at 540-41; *Nat'l Ass'n of Manufacturers v. S.E.C.*, 800 F.3d 518, 523 (D.C. Cir. 2015). Instead, Preferra alleges that ASI is a "services company" and merely speculates that ASI "presumably" has relationships with other carriers. (Doc No. 1, ¶¶ 3, 69).

Preferra has also failed to adequately allege any actions "likely to cause confusion." Preferra claims alleged statements by ASI that Preferra "has no connection to the social work field" and that "ASI's dedication to serving you remains unwavering" are intended to confuse Preferra's policyholders. However, broad and generic statements such as these generally do not meet the standard for causing confusion. *See, e.g., Guantanamera Cigar Co. v. Corporacion Habanos*, S.A., 672 F. Supp. 2d 106, 111 (D.D.C. 2009) (requiring that plaintiffs demonstrate that statements have at least a minimum of credibility to survive a motion to dismiss); *Tooley v. Napolitano*, 586 F.3d 1006, 388 U.S. App. D.C. 327, 2009 U.S. App. LEXIS 25175, *10 (D.C. Cir. 2009) (finding the alleged statements were "patently insubstantial," warranting dismissal); *see also Iqbal*, 129 S. Ct. at 1950 (ruling you need more than "a sheer possibility that a defendant has acted unlawfully"); *Miniter v. Sun Myung Moon*, 736 F. Supp. 2d 41, 48 (D.D.C. 2010) (dismissing claims because "the plaintiff has provided no allegation demonstrating the 'facial plausibility' of his false light, unfair trade practices or Lanham Act claims") (quoting *Iqbal*, 129 S. Ct. at 1949).

Additionally, Preferra has failed to plead a viable cause of action for false advertising under the Lanham Act because it has not alleged any advertising. "To survive a motion to

dismiss or for judgment on the pleadings [on a claim of false advertising under the Lanham Act], the plaintiff must allege that the defendant 'made statements of fact in [its] commercial advertising promotion that were (1) false or misleading, (2) actually or likely deceptive, (3) material in their effects on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to the plaintiff.'" *Globalaw*, 452 F. Supp. 2d at 58 (quoting *Dial A Car*, 884 F. Supp. at 592).

The Complaint here repeatedly asserts that ASI made "false and misleading statements," but does not allege that these statements were made in connection with any advertising. (Doc No. 1, ¶ 68). Additionally, the Complaint is devoid of any allegation that ASI's statements had a material effect on buying decisions or were actually injurious to Preferra. Even if Preferra had alleged any of those elements, the purported statements by ASI were neither false nor misleading. District of Colombia courts regularly dismiss actions which as this where the plaintiff fails to allege any false or misleading statements to support its Lanham Act claim. *See, e.g.*, *Dial A Car*, 884 F. Supp. at 593 ("The complaint fails to support the first element of a Lanham Act false advertising claim -- that the promotion was a false or misleading statement of verifiable fact."). This Court should again do so here.

For all of the foregoing reasons, Preferra's claims against ASI for unfair competition and false advertising under the Lanham Act should be dismissed, with prejudice, as a matter of law.

## II.    Preferra's Breach of Contract Claims against ASI (Count Two) and NASWIC (Count Six) Fail

"A successful breach-of-contract claim requires: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Caesar v. Westchester Corp.*, 280 A.3d 176, 184 (D.C. 2022) (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). A breach of contract is defined

as an "unjustified failure to perform all or any part of what is promised" in a contract. *Bembery v. D.C.,* 758 A.2d 518, 520 (D.C. 2000) (internal citations omitted). A total breach is defined as a material failure of performance, which goes to the "essence" and frustrates substantially the purpose for which the contract was agreed to by the injured party. *Keefe Co. v. Americable Intern, Inc.,* 755 A.2d 469, 475 (D.C. 2000).

### A.    Allegations against ASI

In the Complaint, Preferra purports to assert that ASI breached the ASI Agreement by: (1) failing to provide services that were paid for by Preferra; (2) failing to pay severance for Benedetto as required under his employment agreement; (3) locking Preferra employees out of physical space ASI was obligated to provide; (4) refusing access to electronic data and systems, files and documents, including historical claims files and other confidential information, which is necessary for Preferra to perform its functions; and (5) interfering with employee benefits for employees who were dually employed by ASI and Preferra. (Doc No. 1, ¶ 30).

Pursuant to the 2022 ASI Agreement, ASI was obligated to provide marketing and other services to Preferra, such as office and administration support, in exchange for reimbursement of expenses and a fee by Preferra. Specifically, Section 1 of the 2022 ASI Agreement provides:

> ASI will provide [Preferra] with the administrative staff and support facilities necessary to support specific functions of [Preferra], including marketing and administrative services, and will be reimbursed as provided in paragraph 8. Without limiting the foregoing, ASI shall, as directed by [Preferra]'s Directors and Officers, be responsible for:
>
> a.  Providing marketing campaigns that are directed by [Preferra] staff.
>
> b.  Providing administrative support as requested by [Preferra] staff.
>
> c.  Providing limited administrative and treasury services for [Preferra] as directed by [Preferra] staff including appropriate administrative staff and support facilities;

> d.  Providing such other services as requested by [Preferra] and agreed to by ASI.

(Ex. 2, p. 1).

Preferra fails to state a claim for breach of contract against ASI because, among other things, it has not adequately alleged that ASI's breaches caused any damages. "It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Tsintolas*, 984 A.2d at 187 (citing *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1999)). "[M]ere breach without proof of monetary loss is *injuria absque damno*," *Id.* (citing *Cagle v. Southern Bell Tel. & Tel. Co.*, 143 Ga. App. 603, 604, 239 S.E.2d 182, 183 (Ga. Ct. App. 1977)), *i.e.*, "a wrong which results in no loss or damage, and thus cannot sustain an action." *Id.* (citing *Mira*, 107 F.3d at 473 n.7 (citing Black's Law Dictionary 785 (6th ed. 1990))). Here, Preferra alleges only conclusory damages resulting from ASI's alleged breaches in an amount "to be determined at trial."

Preferra also fails to state a claim for breach of contract against ASI for allegedly locking Preferra employees out of physical space, refusing access to electronic data and systems, or interfering with employee benefits for employees because Preferra has not alleged any entitlement to those things under the 2022 ASI Agreement or otherwise. Plaintiff does not, and cannot, cite to any contractual requirement for ASI to provide any of the things listed. As noted, Plaintiff also does not and cannot point to any damages resulting from ASI's alleged failure to do so. *Tsintolas*, 984 A.2d at 187.

As for any alleged failure to pay severance to Benedetto, Preferra fails to state a claim for breach of contract against ASI because it has no standing to assert any such claim. To have standing, a plaintiff "must have suffered actual or imminent 'injury in fact.'" *Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 57 (D.D.C. 2010) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992)).  A plaintiff "cannot claim injury on behalf of another person."  *Id.*  Here, Preferra has not alleged that it suffered actual or imminent injury in fact for ASI's alleged failure to pay Benedetto's severance.  Rather, any complaints about the lack of severance plainly belong to Benedetto.  Benedetto has already asserted those claims against ASI and NASWIC in a Maryland state court action.  Preferra, therefore, lacks standing to again bring that claim here.

Moreover, even if Preferra had standing to assert claims regarding Benedetto's alleged severance, none is due under Benedetto's employment contract because, in light of his obvious breaches of fiduciary duty, ASI and NASWIC rejected Benedetto's resignation and instead terminated him "for cause."  Preferra also does not and cannot point to any damages it suffered as a result of ASI's alleged failure to pay Benedetto severance.  As discussed, in addition to being a requirement for standing, damages are an essential element of a breach of contract claim.  *Tsintolas*, 984 A.2d at 187.

For each of the foregoing reasons, Preferra's breach of contact claims against ASI should be dismissed, with prejudice.

### B.    Allegations against NASWIC

As for NASWIC, Preferra alleges that it breached its contractual obligations to Preferra because it:  (1) failed to pay severance due to Benedetto; (2) impaired Preferra's ability to comply with its regulatory obligations by refusing to communicate with Preferra and blocking access to data, emails and other information; (3) failed to meet its financial obligations under the Quota Share Policy by filing to provide $3,100,000 in security for potential losses through December 31, 2023; (4) failed to pay reinsurance amounts due and owing to Preferra under the Quota Share Policy in connection with losses that NASWIC was obligated to cover; and

(5) failed to pay over $180,000 in claims. (Doc No. 1, ¶¶ 62-65). These claims fail for numerous reasons.

As with its claims against ASI, Preferra does not allege what, if any, damages it supposedly incurred as a result of any of Defendants' alleged conduct. *Tsintolas*, 984 A.2d at 187. Preferra has also again not even attempted to explain why it has standing to assert a claim for severance on behalf of Benedetto. *Sharp*, 680 F. Supp. 2d at 57. Preferra has also not plausibly alleged any conduct which even suggests how Defendant NASWIC might have impaired Preferra's ability to comply with its regulatory obligations, failed to provide $3,100,000 in security for *potential* losses (an allegation which itself does not make any sense given the passage of a year since December 31, 2023), failed to pay some unspecified reinsurance amounts, or failed to pay any claims.

For these reasons, Preferra's purported breach of contract claims fail as matter of law and should be dismissed, with prejudice.

### III. Preferra Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing against ASI (Count Three) and NASWIC (Count Seven)

The District of Columbia recognizes that "in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988) (internal quotation marks and citation omitted). The meaning of "good faith" varies with the context. *Restatement (Second) of Contracts* § 205, cmt. a (1981). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of

decency, fairness or reasonableness." *Allworth*, 890 A.2d at 201-02 (quoting *Restatement (Second) of Contracts* § 205, cmt. a (1981)).

"To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013). Parties do not breach the implied covenant "by failing to do something they had no obligation to do." *Brown v. Sessoms*, 774 F.3d 1016, 1025, 413 U.S. App. D.C. 328 (D.C. Cir. 2014). Further, "[b]ad faith requires more than mere negligence; examples include lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform." *Allworth v. Howard Univ.*, 890 A.2d 194, 202 (D.C. 2006). Bad faith "may be overt or may consist of inaction, involving evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* at 201-202 (quoting *Restatement (Second) of Contracts* § 205, cmt. d (1981)).

In the Complaint, Preferra alleges that "ASI owes Preferra the duty of good faith and fair dealing in connection with the ASI Agreement." (Doc No. 1, ¶ 78). Preferra asserts that ASI breached the covenant of good faith and fair dealing by "taking actions to disrupt Preferra's ability to conduct business and by misleading Preferra policyholders with false communications that are designed to induce policyholders to contact ASI with matters relating to their Preferra policies by falsely asserting that policyholders are ASI customers." (*Id.*, ¶ 79). Additionally, as against NASWIC, Preferra purports that "NASWIC owes Preferra the duty of good faith and fair dealing in connection with the Quota Share Policy and the XOL Policy." (*Id.,* ¶ 94). Preferra alleges that "NASWIC has breached that covenant by, among other things, taking actions to

disrupt Preferra's ability to conduct its business and meet its regulatory compliance obligations by failing to communicate and provide necessary information to Preferra." (*Id*., ¶ 95).

The foregoing allegations do not state a claim for breach of the duty of good faith and fair dealing because Preferra has not alleged that any of Defendants' conduct was arbitrary, capricious, or anything else which amounts to bad faith. As noted, bad faith requires more than mere negligence, such as lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform. *Allworth v. Howard Univ*., 890 A.2d at 202. Preferra asserts conclusory statements that ASI took "actions to disrupt Preferra's ability to conduct business," and that NASWIC took "actions to disrupt Preferra's ability to conduct its business." Preferra does not reveal what these conclusory statements could actually mean. *See, e.g., Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 51 (D.D.C. 2012) (granting motion to dismiss as to claim for breach of the implied covenant of good faith and fair dealing because plaintiff failed to allege facts that would permit the court to infer defendant acted with the requisite bad faith or willfully rendered imperfect performance). Preferra also again fails to allege any actual damages as a result of Defendants' conduct.

Fort each of these reasons, Preferra's bad faith claims against ASI and NASWIC should be dismissed, with prejudice, as a matter of law.

## IV.    Preferra's Claims for Tortious Interference with Business Relations against ASI (Count Four) and NASW (Count Eight) Fail

To state claims for tortious interference under District of Columbia law, a plaintiff must allege: (1) the existence of a contract or business expectancy; (2) the defendant's knowledge of the contract or business expectancy; (3) intentional interference causing the breach of the contract or termination of the business expectancy; and (4) damages. *Banneker Ventures, LLC v Graham*, 418 US App DC 398, 413, 798 F.3d 1119, 1134 (2015).

As against ASI, the Complaint alleges that "ASI is aware of the contractual relationship between Preferra and its policyholders" and that "ASI has intentionally interfered with this relationship by, among other things, falsely asserting that ASI provides insurance and that policyholders have a 'customer' relationship with ASI and not Preferra." (Doc. No. 1, ¶¶ 83-84). As a result, Preferra contends only that it "has been damaged." (*Id.*, ¶ 85). Preferra fails to state a valid claim for tortious interference with business relations against ASI because those vague allegations of harm are insufficient as a matter of law and because Preferra does not plead how ASI actually interfered with its contractual relationship with any of Preferra's policyholders. *See, e.g., Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 860 (D.D.C. 2022) ("A plaintiff's claim must rise above the speculative level. A claim cannot survive a motion to dismiss if based on inferences unsupported by facts or legal conclusions disguised as factual allegations." (citations omitted)).

Preferra repeatedly asserts that ASI represented that it provided insurance to Preferra's policyholders but ASI's alleged statements do not actually say this. Instead, Preferra relies on general statements made by ASI to policyholders such as "ASI's dedication to serving you remains unwavering" or indicating "[t]o our loyal customers." (*Id.*, ¶¶ 56-57). Statements of this nature do not meet the standard of tortious interference with business relations. A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, and the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See, e.g., Close It! Title Servs. v. Nadel*, 248 A.3d 132, 138 (2021). Preferra simply has not met that standard, nor has it alleged any damages as a result of ASI's conduct.

28

As regards NASW, Preferra alleges that "[p]rior to the termination of the agreements with ASI and NASWIC, Preferra had an existing and valid contractual relationship with those entities" and NASW "intentionally interfered with these relationships by, among other things, causing ASI and NASWIC not to perform their contractual obligations." (Doc. No. 1, ¶¶ 98, 100). As a result, Preferra again contends only that it "has been damaged." (*Id.*, ¶ 101). However, Preferra again fails to state a valid claim for tortious interference with business relations because such vague allegations of harm are insufficient and because Preferra does not plead how NASW actually interfered with its contractual relationship with ASI or NASWIC. *See, e.g., Bernhardt*, 47 F.4th at 860. The Complaint does not say anything about what NASW did to interfere with Preferra's business, beyond vague allegations that it was somehow involved with the dispute between Preferra and ASI or NASWIC. Preferra concedes that it had no contractual or other direct relationship with NASW. Preferra also has, again, not alleged any damages as a result of NASW's supposed conduct.

For these reasons, Preferra fails to state claims against ASI and NASW for tortious interference with business relations and those claims should be dismissed, with prejudice.

## V. **Preferra's Claim for Declaratory Judgment (Count Five) Fails**

The Declaratory Judgment Act permits a court to determine the legal rights of parties "when there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016); 28 U.S.C. § 2201(a). In determining whether to grant declaratory relief, the court should focus on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941).

A case or controversy exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Powder River Basin Res. Council v. United States DOI*, 2024 U.S. Dist. LEXIS 8980, *6 (D.D.C. 2024) (citing *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 964, 314 U.S. App. D.C. 267 (D.C. Cir. 1995) (quoting *Md. Cas. Co.*, 312 U.S. at 273). Courts routinely deny requests for declaratory relief when such relief would be duplicative of other claims in the litigation or would otherwise not effectuate the purpose of the Declaratory Judgment Act. *See, e.g.*, *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 108 (D.D.C. 2020) (dismissing plaintiff's claim for declaratory relief under the Declaratory Judgment Act because judgment on the breach of contract claim "would defeat the need for a declaration"); *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 31 (D.D.C. 2017) (dismissing declaratory judgment claim because it raised issues "duplicative of those addressed by the breach of contract claims").

As an initial matter, claims for declaratory judgment are more appropriately raised in prayers for relief, and not as stand-alone claims. *See Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 45 (D.D.C. 1996). Notwithstanding, in the Complaint, Preferra seeks a declaration that ASI "has no relationship and no rights to communicate with Preferra policyholders regarding their policies of insurance." (Doc No. 1, ¶ 89). However, nowhere in any contract is ASI prohibited from contacting Preferra policyholders. Accordingly, Preferra's claim for declaratory relief should be dismissed on that basis alone. Alternatively, Preferra's

declaratory relief claim should be dismissed as duplicative of its other claims for breach of contract, tortious interference, and unfair competition/false advertising.

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court issue an order dismissing Plaintiff's Complaint against the Defendants, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
        December 17, 2024

Respectfully submitted,

*/s/ Richard W. Boone Jr.*
Richard W. Boone Jr., D.C. Bar No. 478545
Siobhán A. Mueller (*pro hac vice*)
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
150 E. 42nd Street
New York, NY 10017
Tel.  (212) 490-3000
richard.boone@wilsonelser.com
siobhan.mueller@wilsonelser.com

*Attorneys for Defendants*

## **REQUEST FOR ORAL HEARING PURSUANT TO LCvR 7(f)**

Pursuant to LCvR 7(f) on Oral Hearings, Defendants respectfully request an oral hearing on this motion at a date and time the Court designates.

By:    */s/ Richard W. Boone Jr.*
       Richard W. Boone Jr., D.C. Bar No. 478545

## CERTIFICATION

The foregoing **MEMORANDUM OF LAW** was prepared on a computer, using Microsoft Word, the typeface is Times New Roman, the main body is in 12-point font with 1-inch margins throughout, and the length is 31 pages double-spaced, which is consistent with LCvR 7(e) of the Rules of the United States District Court for the District of Columbia.

By:     */s/ Richard W. Boone Jr.*
        Richard W. Boone Jr., D.C. Bar No. 478545